Matter of Smolyar (2018 NY Slip Op 06018)





Matter of Smolyar


2018 NY Slip Op 06018


Decided on September 12, 2018


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 12, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
RUTH C. BALKIN, JJ.


2017-01558

[*1]In the Matter of Oleg Smolyar, an attorney and counselor-at-law, respondent. (Attorney Registration No. 4419651)



The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 20, 2006. By order to show cause dated April 6, 2017, the respondent was directed to show cause why an order should or should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by the opinion and order of the United States District Court for the Southern District of New York dated January 11, 2017. By decision and order on application dated August 11, 2017, inter alia, the matter was referred, upon the request of the respondent, to David I. Ferber, as Special Referee, to hear and report on the issue of mitigation.



Diana Maxfield Kearse, Brooklyn, NY (Sasha N. Holguin of counsel), for Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts.
Michael S. Ross, New York, NY, for respondent.



PER CURIAM.


OPINION & ORDER
By opinion and order dated January 11, 2017, the United States District Court for the Southern District of New York (hereinafter the District Court), on consent, permanently enjoined the respondent from appearing as an attorney in any action or proceeding before that court. In response to an order to show cause by this Court directing that the respondent show cause why an order should or should not be made pursuant to 22 NYCRR 1240.13 imposing discipline upon him based on the misconduct underlying the discipline taken against him by the District Court, the respondent asserted no objection to the imposition of discipline; however, he requested a hearing to present mitigation. Following a mitigation hearing held on October 10, 2017, the Special Referee issued a report. The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts now moves to confirm the report of the Special Referee and to impose such discipline upon the respondent as the Court deems just and proper. The respondent supports the motion and asks that a public censure be imposed in view of the mitigation presented.
I. District Court Opinion and Proceedings 
A. Memorandum and Order on Sanctions 
The disciplinary action taken by the District Court against the respondent in the form of a permanent injunction was predicated on the respondent's conduct in an action entitled Luscier v Risinger Bros. Transfer (2015 US Dist LEXIS 129640 [SD NY, No. 13-cv-8553 (PKC)]) commenced in the District Court, for which sanctions were imposed under rules 11 and 56(h) of the [*2]Federal Rules of Civil Procedure. The relevant facts, set forth in the District Court's Memorandum and Order on Sanctions dated September 17, 2015 (hereinafter the Sanctions Order), briefly summarized, are as follows:
Represented by the law firm of Hallock & Malerba, P.C., Sheri Luscier commenced a personal injury action, claiming serious injury as a result of an automobile collision. The respondent, of counsel to the Hallock & Malerba firm, was assigned to work on the case. The defendants moved for summary judgment. In response to the motion, counsel for the plaintiff filed opposition papers, including, inter alia, an affidavit from the plaintiff, Luscier (hereinafter the Luscier Affidavit). The summary judgment motion was denied, and a jury was impaneled. At trial, on cross-examination, it was elicited from Luscier that she had not seen the affidavit, did not know its contents, and the signature did not look like hers. The District Court, in a sidebar, asked the plaintiff's trial counsel, Larry Hallock, to have his partner, Mary Malerba, file a declaration explaining the circumstances surrounding the Luscier Affidavit and its execution. When no declaration was filed, the District Court raised the subject again with Hallock, who advised that he would secure an affidavit from the associate who prepared the Luscier Affidavit.
On June 23, 2015, Hallock filed an "Attorney's Affidavit," dated June 22, 2015, signed (but neither sworn before a notary nor declared under penalty of perjury) by the respondent, which read as follows:
"1. My name is Oleg Smolyar. I am an attorney licensed to practice in the State of New York.
"2. On or about May 22, 2015 it was requested by Hallock & Malerba P.C., that I prepare threshold opposition for the case of Sheri Luscier vs Risinger Brothers Transfer Inc. and Darvin Ray Phillips, pending in the Southern District of New York, United States District Court.
"3. On or about May 29, 2015, I spoke with Sheri Luscier in regards to her Plaintiff's Affidavit. At that time I read it to her word for word and several changes were made at her request.
"4. Upon making the changes, I again spoke with Ms. Luscier about the contents of the affidavit. I advised her that the papers were due and needed her signature.
"5. She advised me that Hallock & Malerba P.C., has a Power of Attorney, and that I have permission to sign her name. I signed those papers on her behalf and they were submitted to the court."
As a result of these revelations, the District Court directed the law firm and the respondent to show cause why sanctions should not be imposed. On July 13, 2015, the respondent, represented by Michael Ross, submitted a declaration recanting the "Attorney's Affidavit," stating that he never spoke to Luscier about her affidavit, that she never made suggestions which were incorporated into the affidavit, and that he never read the affidavit to her by telephone. The respondent stated that his supervisor at the firm, Malerba, had explained to him the urgency of the matter, that Luscier was in Massachusetts and would be physically unable to sign her affidavit in time for submission, but that the firm had Luscier's power of attorney, which permitted the firm to sign documents on Luscier's behalf. The respondent also stated that the incident was an "isolated and aberrational incident" and that to the best of his recollection, he "had never before signed the name of any client onto any document," nor had he ever "notarized [his] own signature or the signature of an individual who did not sign in [his] presence." In sum, the respondent's declaration clarified that the jurat on the Luscier Affidavit was false and that the "Attorney's Affidavit" explaining the circumstances of the Luscier Affidavit contained several material falsehoods.
Upon receipt of the respondent's declaration, the District Court issued another order, expanding the bases for possible sanctions. The District Court placed the respondent on notice that it was now considering sanctioning him based on his submission of false statements to that court, i.e., the "Attorney's Affidavit" (see Rules of Professional Conduct [22 NYCRR 1200.0] rules 3.3[a][1], [3]; 8.4[a], [c], [d]). Hallock, Malerba, and the law firm were also placed on notice and ordered to explain why they should not be sanctioned based upon the submission of false statements [*3]to the District Court, failure to correct false statements of material fact to the District Court, offering and using evidence that the lawyer knows to be false, engaging in conduct that amounts to violating or attempting to violate the Rules of Professional Conduct (22 NYCRR 1200.0) or knowingly assisting or inducing another to do so, engaging in conduct involving dishonesty, deceit, or misrepresentation, engaging in conduct that is prejudicial to the administration of justice, and for failure to supervise (see Rules of Professional Conduct [22 NYCRR 1200.0] rules 3.3[a][1], [3]; 5.1, 8.4[a], [c], [d]).
In response to the order to show cause, Hallock and Malerba submitted declarations, in essence, denying responsibility for the execution of the Luscier Affidavit. They claimed that they had no reason to believe that the Luscier Affidavit had not been signed by Luscier and were shocked to learn otherwise. As for the "Attorney's Affidavit," it was undisputed that it was drafted verbatim by Hallock and that it falsely explained the circumstances surrounding the Luscier Affidavit. Hallock's account of the facts surrounding its creation, however, differed from the respondent's account. The respondent claimed that Hallock had drafted the contents before speaking to the respondent, and instructed him to use the language provided. Hallock, on the other hand, claimed that he drafted the "Attorney's Affidavit" after speaking to the respondent and that the statement accurately reflected the circumstances revealed to him. In addition, Hallock and Malerba disclosed in their declarations that the respondent had improperly signed a client affidavit on a previous occasion. Thus, they asserted that the respondent's representation that he had improperly signed and notarized a client affidavit on only one occasion was false. Confronted with these assertions, the respondent, in a declaration dated August 28, 2015, withdrew his statement regarding the isolated nature of his misconduct.
The District Court determined that the respondent's conduct warranted sanctions under rules 11 and 56(h) of the Federal Rules of Civil Procedure, finding that he had engaged in bad faith with respect to both the Luscier Affidavit and the "Attorney's Affidavit." The District Court noted that it was permitted to sanction the respondent, notwithstanding the fact that he was not admitted to practice in the district, since the rules at issue do not require that the attorney be admitted to practice in the sanctioning court or be an attorney of record. The District Court gave little weight to the respondent's professed remorse and found no substantial mitigating circumstances as to the "Attorney's Affidavit." The District Court stated, "[w]hen confronted with the false attestation in the Luscier Affidavit,' [respondent] made up a fictitious story of two conversations with Ms. Luscier and the inputting of her changes. In truth, he never spoke to her. He lied in an effort to avoid responsibility for his misconduct."
With respect to the law firm of Hallock & Malerba, P.C., and its partners, the District Court determined that sanctions were warranted under rule 11 based not on the fact that the law firm had the misfortune of employing a lone wolf, but because Hallock, a named partner in the firm, was a direct participant in the preparation and filing of the "Attorney's Affidavit." Assuming that Hallock drafted the "Attorney's Affidavit" after speaking to the respondent, the District Court found that Hallock had serious reasons to doubt the veracity of the contents of the "Attorney's Affidavit," but failed to make any attempt to verify the respondent's account before filing the "Attorney's Affidavit" with the court.
The District Court sanctioned the respondent in the amount of $5,000 under rule 56(h) of the Federal Rules of Civil Procedure, and sanctioned the respondent and the law firm of Hallock & Malerba, P.C., jointly and severally, in the amount of $9,000 under rule 11 of the Federal Rules of Civil Procedure. The District Court referred the matter to its Committee on Grievances.
B. Statement of Charges by the District Court 
By order to show cause dated July 7, 2016, the Committee on Grievances of the District Court directed the respondent to show cause why he should not be permanently enjoined from appearing as an attorney in any action or proceeding in that court without further order of the Committee, based on the misconduct set forth in the Statement of Charges. The Statement of Charges alleged that the respondent had violated rules 3.3(a)(1) and (3), 3.4(a)(5), and 8.4(a), (c), (d), and (h) of the Rules of Professional Conduct, as follows:
"1. Respondent is formerly of counsel to the law firm Hallock & Malerba, P.C., which represented plaintiff Sheri Luscier in a lawsuit over an automobile collision. On September 17, 2015, the Honorable P. Kevin Castel imposed monetary sanctions [*4]on Respondent and Hallock & Malerba based on serious misconduct in connection with that representation, as described in detail in the September 17 Sanctions Order . . . .
"2. Respondent served as the notary public and draftsman of an affidavit purportedly from plaintiff. The affidavit was submitted by plaintiff's counsel in opposition to a summary judgment motion (the Luscier Affidavit'). The Luscier Affidavit was a sham filing. Implicit in the Luscier Affidavit were a number of false representations—specifically, that it was a truthful affidavit of Ms. Luscier, that Respondent had administered an oath to Ms. Luscier, and that Ms. Luscier had subscribed the affidavit in Respondent's presence. In reality, Ms. Luscier had neither read nor signed the Luscier Affidavit, nor had she even spoke to Respondent before it was submitted.
"3. Respondent submitted to the Court an Attorney's Affidavit which falsely stated that he had read the Luscier Affidavit to Ms. Luscier, that she commented on it, and that her changes were incorporated in the final product.
"4. On July 13, 2015, Respondent submitted to the Court a declaration wherein he falsely stated at various points that he had never before engaged in similar misconduct. In a later Declaration dated August 28, 2015, Respondent withdrew those false statements" (citations omitted).
In response to the order to show cause and the Statement of Charges, the respondent submitted a declaration dated July 27, 2016, wherein he consented to the Committee on Grievances entering an order enjoining him from appearing as an attorney in any action or proceeding before the District Court without further order of the Committee on Grievances.
C. District Court Opinion and Order 
By opinion and order dated January 11, 2017, the Committee on Grievances of the District Court permanently enjoined the respondent from appearing as an attorney in any action or proceeding before that court, on consent. The Committee on Grievances concluded:
"[H]aving carefully considered Respondent's submission in response to the July 7, 2016 order to show cause and statement of charges that were issued in this matter, [the Committee] finds that Respondent has raised no issues requiring a hearing. See S.D.N.Y. Local Civil Rule 1.5(d)(4). On the basis of the record and Respondent's own admissions, the Committee finds that Respondent acted in violation of Rules 3.3(a)(1) (knowingly made false statements of fact to a tribunal); 3.3(a)(3) (knowingly used false evidence); 3.4(a)(5) (participated in the creation of false evidence); and 8.4(a) (violated the Rules of Professional Conduct); 8.4(c) (engaged in conduct involving dishonesty, fraud, deceit or misrepresentation); 8.4(d) (engaged in conduct prejudicial to the administration of justice) and 8.4(h) (engaged in conduct that reflects adversely on his fitness to practice law).
"In the July 27 Declaration, Respondent consents to the Committee entering an Order enjoining him from appearing as an attorney in any action or proceeding in the Southern District of New York without further order of the Committee. Taking into consideration all of the circumstances indicated by the record, it is the Committee's opinion that such an order would be an appropriate and suitable discipline to be imposed upon Respondent. Accordingly, pursuant to S.D.N.Y. Local Civil Rule 1.5(b)(5) and (c)(1), it is hereby ORDERED that Respondent is permanently enjoined from appearing as an attorney in any action or proceeding before the United States District Court for the Southern District of New York, effective immediately."
II. Mitigation Hearing 
At the mitigation hearing, the respondent, after testifying about his personal background, admitted that he improperly signed and notarized a document and provided false facts. In mitigation, he explained that he had been asked to prepare the Luscier Affidavit on short notice and was informed by his supervisor that Luscier, who was out of town, would not be able to sign her affidavit before the date it was due to be filed with the court, but that the firm had a power of attorney for her. The respondent understood that under these circumstances, he was expected to sign on Luscier's behalf. Attorneys at the firm were often told that if they were not willing to do as such, the firm would find someone else who would, suggesting that the attorney would risk termination if he or she did not comply. The respondent, who was fearful of losing his job, complied. The respondent further testified that Hallock and Malerba knew that he had never met Luscier and that they knew that he would be signing for her. The respondent conceded, however, that the decision to sign the Luscier Affidavit was his decision. In addition, the respondent admitted that he had signed and notarized the names of other clients approximately 5 to 10 times in the past.
With regard to the "Attorney's Affidavit," the respondent testified that it was prepared at Hallock's direction. The respondent merely copied and pasted an affidavit that Hallock had already drafted for him. The respondent testified that Hallock told him, " Check your email, . . . I took the liberty of making an affidavit for you which you must sign, and those statements in the affidavit, just cut, paste and sign.'"
As for his declaration dated July 13, 2015, submitted to the District Court, the respondent admitted that it was not fully accurate inasmuch as he stated therein that the Luscier Affidavit was the first time that he improperly signed and notarized a client's affidavit. For that reason, the respondent withdrew the statement in a subsequent declaration.
The respondent testified that he was truly ashamed and embarrassed about what he did, that it was morally and ethically wrong, and that he would never do it again. He deeply regretted his actions. In retrospect, he realized that he should have resigned from the firm, rather than comply with its practices.
On cross-examination, it was elicited that no one explicitly instructed the respondent to sign for Luscier, but that it was his understanding that this was what he should do, following past practice.
III. Special Referee's Report 
In his report, the Special Referee remarked with regard to the mitigating evidence presented:
"At the Hearing before me, the Respondent presented credible character evidence demonstrating a reputation for honesty and integrity among his family, friends and legal colleagues.
"The Respondent also introduced three witnesses who testified to his good reputation in his community.
"As the transcript of the Hearing reveals, the Respondent expressed contrition and great remorse for his actions, and I was convinced that his remorse is real and honest and that he will never repeat such a transgression again."
IV. Motion to Confirm 
The Grievance Committee moves to confirm the report of the Special Referee. In response, while conceding that his submission of false statements to the District Court to cover up his false notarization is an aggravating factor, the respondent contends that a public censure, nonetheless, is the appropriate sanction in view of the following mitigating factors: his acceptance of full responsibility for his misconduct; his cooperation with the proceedings; his personal background as a teenager who emigrated to this country as a refugee from Ukraine and who achieved professional success; his reputation as an honest, hardworking, and caring attorney; his payment of a monetary fine to the District Court; his tremendous remorse and contrition for his misconduct; the [*5]reliance of his family (including two young children) on him as the primary source of financial support; and the fact that his actions consisted of following the orders of his supervisors for fear of losing his job.
The respondent has no prior disciplinary history.
V. Findings and Conclusion 
Notwithstanding the aforementioned mitigating factors, we find that although the respondent is not entirely to blame for the false statements made in the Luscier Affidavit and the "Attorney's Affidavit," he cannot escape responsibility altogether for his role in the events. The Luscier Affidavit and the "Attorney's Affidavit" were prepared while under the supervision of his employer. When directed by the District Court to explain the circumstances surrounding the Luscier Affidavit, the respondent, instead of coming clean, submitted a second false affidavit to cover up his initial misconduct. He then compounded his wrongdoing by falsely claiming in a subsequent declaration that the Luscier Affidavit was an aberration and an isolated incident. At this juncture, the respondent was no longer operating under any pressure exerted by his employer, as he had retained his own counsel. Only when confronted with evidence that he had signed an affidavit on behalf of another client and notarized the client affidavit did the respondent withdraw his false statement. Moreover, the respondent testified at the hearing before the Special Referee that he had signed and falsely notarized client affidavits approximately 5 to 10 times in the past.
Based on the foregoing, the Grievance Committee's motion to confirm the report of the Special Referee is granted. Taking into consideration both aggravating and mitigating factors in this case, we conclude that a suspension from the practice of law for a period of one year is warranted based on the discipline taken against the respondent by the District Court.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that pursuant to 22 NYCRR 1240.13, the respondent, Oleg Smolyar, is suspended from the practice of law for a period of one year, commencing October 12, 2018, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than July 12, 2019. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that during the period of suspension and until further order of this Court, the respondent, Oleg Smolyar, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Oleg Smolyar, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Oleg Smolyar, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR [*6]1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court